IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NICHOLE L. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CV3250 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | MEMORANDUM AND ORDER |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Nichole L. Thomas ("Thomas") seeks review of a decision by the defendant, Michael J. Astrue, the Commissioner of the Social Security Administration ("Commissioner"), partially denying her request for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq., and for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq.  Thomas also seeks leave to amend her complaint in this matter.  After carefully reviewing the record, the court finds Thomas' motion to amend should be denied, but the matter should be remanded to the ALJ for further determination of whether Thomas was disabled, for the purposes of disability insurance benefits and supplemental security benefits, from September 26, 2003 to February 29, 2004.

I.  PROCEDURAL BACKGROUND

Thomas initially filed applications for SSDI and SSI benefits on October 31, 2001 ("Application 1").[1]  Her application was denied at the initial and reconsideration levels of

---

[1]  Application 1 was for SSI benefits under Title XVI and "for benefits under the other programs administered by the Social Security Administration." (TR. 199)  The "other programs" include SSDI.  See Commissioner's Program Operations Manual System ("POMS") GN 00204.020 ("Generally, applications under Titles II, VIII, XVI, and XVIII (Part A) cover all classes of benefits for which the claimant is eligible on all SSNs regardless of the title of the application unless

administrative determination on April 16, 2002 and June 19, 2002, respectively. Thomas filed a Request for Hearing on June 21, 2002.

At the initial hearing, the ALJ found that Thomas had a medically determinable impairment of fibromyalgia. (TR. 69). However, the ALJ determined Thomas was able to perform her past work as a security guard, fast-food worker, and electronics assembler, as well as jobs identified by a vocational expert at the hearing. (TR. 69). Because Thomas was able to perform past relevant work, the ALJ determined Thomas was not disabled, as defined by the SSA in 20 CFR 404.1529.

The opening of the ALJ's opinion stated that Thomas' application was for "supplemental security income benefits under Title XVI." (TR 60). However, in announcing her decision the ALJ pronounced that Thomas was not "entitled to a period of disability or to the payment of disability insurance benefits under Title II of the Social Security Act." (TR 70).

The Notice of Decision sent to Ms. Thomas with a copy of the ALJ's unfavorable decision stated that Thomas could file a new application if she did not appeal. However it noted that if she filed a new application instead of appealing "you might lose some benefits, or not qualify for any benefits" (TR. 58). Thomas was also informed that the ALJ's decision could be used against her on any new application for benefits, if the facts and issues were the same. (TR. 58). Thomas sought review from the Appeals Council, which was subsequently denied. (Supp. TR. 6).

Thomas sought no further review of Application 1. Instead, Thomas filed a second application for disability and SSI benefits on April 27, 2004, ("Application 2") initially

---

it is specifically limited by the claimant.")

alleging disability beginning March 10, 2001. (Supp. TR. 53-55). Her claims were denied initially, (TR 71, 91-94), and on reconsideration (TR 72, 98-101). Thomas sought a review before an ALJ. At the hearing, Thomas' attorney agreed to amend the alleged onset date to February 1, 2004. (TR. 76). On November 17, 2006, following the hearing, the ALJ found Thomas was not under a "disability" as defined in the Act. (TR. 76-86).

Plaintiff hired a new attorney and requested review of Application 2 by the Appeals Council (TR. 132-41). The Appeals Council reviewed the decision on Application 2 and remanded the case to the ALJ for further proceedings. (TR 142-45). Thomas also filed a third Application ("Application 3") for benefits in January of 2007. The applications were "associated" for the ALJ's consideration, (TR. 785-86 & 798-99) and a hearing was held on September 10, 2008. Additional hearings were held on October 22, 2008 and January 21, 2009 to elicit more testimony and to consider what Thomas' counsel deemed as "new" evidence in support of Thomas' request to amend the alleged disability onset date to March 30, 2001 and reopen Application 1. Steven Kuhn, an impartial vocational expert was present and testified at the October 22, 2008 hearing. (TR. 830) At the January 21, 2009 hearing the ALJ heard the testimony of an impartial medical expert, Morris Alex, MD. (TR. 856).

The ALJ issued a partially favorable decision. (TR. 25). The ALJ refused to reopen the October 31, 2001 determination, found that the opinion of September 26, 2003 had become final and binding, and the earliest onset date which could be considered by the ALJ was September 26, 2003. The ALJ also found that Thomas was not disabled from September 26, 2003 to March 1, 2004. However, the ALJ determined that starting on March 1, 2004, Thomas suffered from the severe impairments of fibromyalgia, obesity, and depression and was disabled as of that date. (TR. 50). Thomas now appeals that decision.

## II.  THE ALJ'S DECISION

As reflected in the ALJ's decision, she made the following findings:

1)  The claimant met insured status requirements of the Social Security Act through December 31, 2004.  (TR. 35).

2)  The claimant has not engaged in substantial gainful activity since September 26, 2003 (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.). (TR. 35).

3)  From September 26, 2003 to March 1, 2004, the claimant has had the following severe impairments: fibromyalgia, obesity, and depression (20 CFR 404.1520(c) and 416.920(c)).

4)  From September 26, 2003 to March 1, 2004, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)). (TR. 36).

5)  From September 26, 2003 to March 1, 2004, the date she became disabled, the claimant had the residual functional capacity ("RFC")  to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), i.e., she could lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours, stand 6 hours, and walk 6 hours.  She could occasionally climb, balance, stoop, kneel, crouch, and crawl, but she was precluded from climbing ladders, ropes, and scaffolds. Due to her mental impairment, the claimant was restricted to unskilled work at an SVP 1-2 level. The work had to be routine and repetitive and not require

4

extended concentration. Social interaction could be occasional, but not intense or constant. The claimant could handle brief superficial interaction. (TR. 37).

6)      Beginning on March 1, 2004, the claimant has had the following severe impairments: fibromyalgia, obesity, and depression (20 CFR 404.1520(c) and 416.920(c)). (TR. 43).

7)      Beginning on March 1,2004 the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)). (TR 44).

8)      Beginning on March 1, 2004, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), i.e., she could lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours, stand 6 hours, and walk 6 hours. She could occasionally climb, balance, stoop, kneel, crouch, and crawl, but she is precluded from climbing ladders, ropes, and scaffolds. Due to her mental impairment, the claimant is restricted to unskilled work at an SVP 1-2 level. The work must be routine and repetitive and not require extended concentration. Social interaction could be occasional, but not intense or constant. The claimant can handle brief superficial interaction. Due to her chronic pain and fatigue, and her need to lie down frequently for extended periods throughout the day, the claimant cannot sustain work on a full-time basis for 8 hours a day, 5 days and 40 hours per week. (TR 45).

9)      Beginning on March 1, 2004, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965). (TR. 48).

5

10) The claimant was born on February 21, 1973, and was 31 years of age, which is defined as a younger individual age 18-49, on March 1, 2004, the established disability onset date (20 CFR 404.1563 and 416.963). (TR. 48).

11) The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964). (TR 48).

12) From September 26, 2003 to March 1, 2004, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Beginning on March 1, 2004, the claimant has not been able to transfer any job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (TR. 49).

13) From September 26, 2003 to March 1, 2004, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966). (TR. 49).

14) Beginning on March 1, 2004, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560( c), 404.1566, 416.960(c), and 416.966). (TR. 50).

6

15.   The claimant was not disabled from September 26, 2003 to March 1, 2004, but
became disabled on that date and has continued to be disabled through the date
of this decision (20 CFR 404.1520(g) and 416.920(g). (TR. 15).

### III.  ISSUES RAISED FOR JUDICIAL REVIEW

Thomas' complaint requests judicial review of the ALJ's decision for the following
reasons:

1)   The Commissioner's decision is unsupported by substantial evidence; and

2)   In denying the claim, the Commissioner used incorrect legal standards and
approaches to fact finding.

In her brief in support of her claim, Thomas more clearly defined the issues as
follows:

1)   The ALJ did not give proper weight to the opinions of Thomas' treating
physicians;

2)   The impartial medical expert testimony was not entitled to any significant
weight;

3)   The ALJ did not rely on the proper standard and made mistakes of fact in
denying the request to reopen the September 23, 2003 decision; and

4)   The Title XVI claim in Thomas' first application has not yet been decided.

## IV.  THE RECORD AND PROCEEDING BEFORE THE ALJ.

Thomas protectively filed an application for SSDI benefits under Title II and SSI benefits under Title XVI on April 27, 2004.  (Supp. TR. 53-59).  On her application, Thomas indicated that she "became unable to work because of [her] disabling condition on March 10, 2001 and [was] still disabled."  (Supp. TR. 53).  She elaborated on the Disability Report, indicating her ability to work was limited by acid reflux disease, fibromyalgia, endometreosis, spinabifida aculta, depression, severe facial pain, and painful headaches. (Supp. TR. 65).  Her last reported job was as a security officer for private security companies from March of 1998 until March of 2001.

Thomas began seeking treatment on January 30, 2001.  She sought treatment from Dr. Barbara Roth for chronic low back pain, muscle cramping, and shooting pain down her legs, and because she could not bend over without pain.  (TR. 657).   She underwent several examinations and x-rays of the lumbar spine.  The radiographs were "essentially normal with spina bifida occulta of the S1 and transitional S1 lumbrosacral vertebra."  (TR. 658).  A second series of tests were performed on Thomas' back in March of 2001.  The tests did not reveal evidence of spinal stenosis or focal disc displacement. (TR. 643).

Thomas was referred to Dr. Walter Briney, who examined her, gave her a diagnosis of "likely fibromyalgia" due to her complaints of increased pain, general weakness, easy fatigability of her arms and legs, and the identification of 10 out of 18 tender points.  (TR. 641).  Thomas also received treatment for depression and participated in physical therapy at that time.  (TR 642).  In May of 2001, Dr. Briney concluded that it "would be very difficult for [Thomas] to carry out regular employment now."  (TR. 641).   Dr. Roth concurred on a note dated May 29, 2001 in which Dr. Roth stated Thomas was being treated for fibromyalgia –  "a chronic condition for which Ms. Thomas may require time off from work"– major depression, endometriosis and gastric reflux disease.  (TR. 398).

8

Although Dr. Briney did not treat Thomas after 2001, Thomas' attorney asked him to review Thomas' file in 2008, and provide an opinion regarding Thomas' disability status. Dr. Briney cites to specific evaluations performed on Thomas, but none between 2001 and April 27, 2004.  (TR. 741-42).  Dr. Briney discussed his findings in a letter and stated "[b]ased on my evaluations in 2001 and a review of her medical records . . . she is physically disabled and unable to carry on regular employment of any type.  The disability was present in 2001 and has carried forward to the present time."  (TR. 742).

After Thomas moved to Nebraska, Dr. Connie Novak began treating her.  Dr. Novak confirmed "multiple trigger points" for fibromyalgia and noted her "diminished strength." (Supp. TR. 228).  Dr. Novak examined Thomas further on February 20, 2003 and noted "8 out of 10 positive trigger points for fibromyalgia," thus confirming her fibromyalgia diagnosis.  (TR. 462).  She further stated that Thomas "has better days where she feels like she is able to do more, but then days it is really bad and she can barely get out of bed," opining that the "inconsistency with her disease makes it difficult if not impossible for her to hold a job."  (Supp. TR. 239).  Dr. Novak further opined that Thomas suffered from depression.  (TR. 462).  Dr. Novak completed a fibromyalgia RFC questionnaire on August 7, 2003 in which she opined that Thomas had the "classic presentation and positive trigger points" of fibromyalgia.  (Supp. TR. 249).   Dr. Novak indicated that Thomas would be capable of "low stress jobs," but would need to be able to take unscheduled breaks during the day and would require a job that permitted shifting positions at will from sitting, standing or walking.  (Supp. TR. 252). However she was unable to opine as to how many hours Thomas could sit or stand/walk during an 8 hour work day due to the inconsistency in Thomas' symptoms.  (Supp. TR. 252).

9

On April 27, 2004, Thomas underwent a vocational rehabilitation assessment by Vocational Rehabilitation.[2]   The vocation rehabilitation specialist noted that the evaluation had to be discontinued because Thomas "was having difficulty tolerating the amount of sitting and stooping over a paper or keyboard."  (TR. 355).   The counseling from Rehabilitation Services continued through at least January of 2007.  (TR. 322).

Thomas also sought treatment for depression in 2001 and was treated with anti-depressant medication. (TR. 640).  Her treatment for depression continued throughout 2002. She was assessed a Global Assessment of Functioning ("GAF") of 55 in January of 2002, (TR. 406).[3]  In April 2002, her GAF was 70 during an independent psychological consultive examination.[4]  (Supp. TR. 220).  Her GAF was scored at 58 when evaluated on March 26, 2003. (TR. 401).  A subsequent mental evaluation was conducted on April 5, 2004 and Thomas was assigned a GAF of 60 by Dr. Sanat Roy, a board certified psychiatrist.  Dr. Roy noted that at that time Thomas was "feeling better" due to her prescribed medication and was "focusing on getting a job."  (TR. 760).

---

[2]  Thomas attempted to receive vocational rehabilitation in October of 2003,but according to the rehabilitation counselor, Thomas missed several appointments because of her fibromyalgia. (TR. 331).

[3]  Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. A GAF of 51-60 indicates "[m]oderate symptoms (e.g. flat affect . . . occasional panic attacks) [or] moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)."  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. 2000) (DSM-IV).

[4]  A GAF of 61-70 indicates "[s]ome mild symptoms . . . [or] some difficulty in social, occupational, or school functioning.  DSM IV at 34.

Thomas received treatment from her primary care physician, Barbara Froehner, MD. Dr. Froehner reported on February 12, 2005 that Thomas had a diagnosis of fibromyalgia, bilateral carpel tunnel syndrome, endometriosis, and depression.  (TR. 549).  At Dr. Froehner's request, Thomas was evaluated by Dr. Louis Gogela on January 7, 2005.  Thomas has continued to receive treatment for depression and her various physical ailments.[5]

At the hearings related to Thomas' various applications, Thomas' attorney reiterated his desire to have Application 1 reopened and the alleged onset date moved back to March 10, 2001.  Thomas argued that reopening was appropriate because she had new evidence in the form of a complete review of Thomas' medical file by Dr. Briney.  (TR. 800).  Thomas' attorney and the ALJ had an extensive discussion regarding whether Dr. Briney's review of previous medical records constituted new evidence for the purpose of reopening a previously final decision.  (TR. 845-851).  The ALJ elicited testimony from Thomas regarding her pain, her past work history and her daily activities.  The ALJ also heard testimony from vocational expert Steven Kuhn in response to hypothetical questions posed relating to Thomas' age, education, work experiences and work-related limitations. (TR. 830-35).

At the final supplemental hearing on the matter, the ALJ elicited testimony from a medical expert, Dr. Morris Alex, by telephone.  Dr. Alex is an internal medicine specialist. Although he is retired, he testified that he had been working for Social Security for "approximately 20 years" and testified as an expert in about 300 cases a year. (TR. 858).  Dr. Alex did not dispute Thomas' diagnosis of fibromyalgia, but opined that she did not become disabled until her fibromyalgia was exacerbated by her worsening depression.  (TR. 873-74). For support of his contention, he noted she had a "progressive drop" in her GAF, noting a score of 70 on April 26, 2002, a score of 60 on April 15, 2004 and a score of 50 on

---

[5]   The court will forego a detailed discussion of Thomas' subsequent treatment as the Commissioner made a finding that Thomas was disabled after March 1, 2004.

November 7, 2008. (TR. 873). He opined that based on the vocational rehabilitation records, the combination of her fibromyaligia and depression rendered her disabled around March or April of 2004. (TR. 876-77).

In her decision, the ALJ denied Thomas' motion to re-open the decision on Application 1 or, in the alternative, to move the alleged onset date to March 10, 2001. The ALJ stated the following regarding the reopening Application 1 and the alleged onset date:

> The prior application for a period of disability and disability insurance benefits was denied for lack of insured status and is not being reopened. The application for supplemental security income is not being reopened and revised because the current application was not filed within 12 months of the date of the notice of the initial determination or within 2 years from the date of the notice of the initial determination on the prior application (20 CFR 416.1488 et seq.) and there is no evidence that it was obtained by fraud or similar fault. The initial determination on the prior application was issued on April 16, 2002 and the current application was protectively filed on April 27, 2004. The provisions of Social Security Ruling 91-5p were considered and do not apply. Accordingly, the previous application is beyond the time limit for reopening and the decision issued on September 25, 2003 is final and binding.

> The undersigned takes notice, however, that the attorney's argument to reopen the prior application is tantamount to an amendment of the alleged onset date back to the original date of March 10, 2001, despite the amendment of this date to February 1, 2004 by the previous attorney. Because the previous decision by the Administrative Law Judge, issued on September 23, 2003 has become final and binding, the earliest date which can be considered by the undersigned is September 26, 2003, the day after the date of the previous decision.

(TR. 32).

As to the merits, the ALJ gave Dr. Alex's testimony the "greatest weight" and largely accepted his opinion on Thomas' disability. Accordingly, the ALJ determined Thomas

became disabled on March 1, 2004 due to the combination of her depression and fibromyalgia. (TR. 45-48).

## V. LEGAL ANALYSIS

### A.    Motion to Amend Complaint

Thomas has filed a motion to amend her complaint to include allegations that her constitutional rights were violated with respect to the handling of Thomas' request to reopen her 2001 application for benefits.  Specifically, Thomas seeks to amend her Complaint, alleging the following due process violations:

(1)    with regard to her prior application, the Appeals Council's January 2004 Notice did not specify what the "special rules" were under which an ALJ's decision could be changed if she did not ask for court review. See Filing No. 42, ¶¶(17)(A), (18)(A);

(2)    the ALJ used improper rules or standards to decide not to reopen Thomas' 2001 applications. See Filing No. 42, ¶¶(18)(B)(1)-(3);

(3)    Plaintiff should have received notice that the ALJ was going to apply these allegedly improper rules or standards. See Filing No. 42, ¶¶(17)(B), (18)(B)(4);

(4)    the ALJ should have decided the reopening issue by the proper issues or standards. See Filing No. 42, ¶(17)(C); and

(5)    Plaintiff should have received a hearing and notice of decision regarding her 2001 Title XVI claim. See Filing No. 42, ¶¶(17)(D), (18)(C).

Thomas also seeks to amend her complaint to add a request for the court to exercise mandamus jurisdiction under 28 U.S.C. § 1361 and order the Commissioner to rule on Thomas' 2001 Title XVI benefits.  See Filing No. 42, ¶¶19-22.

13

Pursuant Fed. Rule Civ. P. 15(a) courts are encouraged to allow amendments liberally. See Shen v. Leo A. Daly Co., 222 F.3d 472, 478 (8th Cir. 2000). However, the right to amend a complaint is not without limits. The Eight Circuit Court of Appeals has discussed the circumstances under which an amendment should be denied:

> [A] district court can refuse to grant leave to amend a pleading only where it will result in undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment.

Dennis v. Dillard Dept. Stores, Inc., 207 F.3d 523, 525 (8th Cir. 2000)(internal citations omitted); see also K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 899 (8th Cir. 2002)(noting futility constitutes a valid reason for denial of leave to amend).

> Usually, a proposed amendment is futile if it could not survive a Rule 12(b)(6) motion to dismiss for failure to state claim. But, when a motion to amend is made in response to a summary judgment motion, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact, even if the amended complaint would state a valid claim on its face.

Alexander v. Westbury Union Free School Dist., ____ F. Supp. 2d. ___, ___, 2011 WL 5401806 at *24 (E.D.N.Y. 2011).

<u>Futility of Amendment to assert due process violations.</u>

Defendant asserts any amendment to the complaint regarding the ALJ's failure to reopen Thomas' case would be futile because the court has no subject matter jurisdiction to review the ALJ's decision not to reopen a prior application or denial of benefits.

14

Social Security Regulation 20 C.F.R. § 416.1488 details when decisions concerning SSI benefits may be reopened:

> A determination, revised determination, decision, or revised decision <u>may</u> be reopened
>
> (a)   within 12 months of the date of the notice of the initial determination for any reason;
>
> (b)   within 2 years of the date of the notice of the initial determination if we find good cause, as defined in 20 C.F.R. 416.1489, to reopen the case;
>
> or
>
> (c)   at any time if it was obtained by fraud or similar fault . . . .

20 C.F.R. § 416.1488 (emphasis added).[6]  Thus, ALJ's decision whether to reopen a closed file is completely discretionary and the ALJ may reopen a case for any reason or for no reason.  See Matthews v. Harris, 495 F.Supp. 141, 144 (D. La. 1980).

Because the decision to reopen a claim is discretionary, the district court does not have subject matter jurisdiction over claims that an ALJ erred by not reopening a claimant's prior application for disability benefits, absent a colorable constitutional claim.  See Califano v. Sanders, 430 U.S. 99, 107-08 (1977).

Thomas has asserted her proposed amendment to her complaint would not be futile because she has a colorable constitutional claim  – that is, her due process rights were violated when the ALJ refused to reopen the case.  The Eighth Circuit has held "[p]rocedural

---

[6]  Similar regulations exist for the procedure and grounds for reopening applications for benefits under Title II for disability benefits.  20 C.F.R. § 404.988.  However, disability cases under Title II may be reopened for "good cause . . . [w]ithin four years of the date of notice of the initial determination."  Id.

15

due process under the Fifth Amendment requires that disability claimants be provided a 'full and fair hearing.'" Passmore v. Astrue, 533 F.3d 658, 663 (8th Cir. 2008); see also Ferriell v. Commissioner, 614 F.3d 611, 620 (6th Cir. 2010)(noting that at a minimum due process requires that "an individual is afforded notice and an opportunity to be heard before the deprivation of a protected interest through adjudication").  In evaluating whether due process has been afforded the court should consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

Other courts have addressed the narrow types of constitutional claims that have left the Commissioner's decision not to reopen an application subject to judicial review.  For example, colorable due process claims have been found to exist in the Social Security context where the claimant received inadequate or insufficient notice that an earlier denial of benefits may preclude the claimant from receiving benefits under a subsequent application due to res judicata.  See Butland v. Bowen, 673 F.Supp. 638 (D. Mass. 1987).  And if the claimant's mental illness precludes the claimant from understanding the appeal process, a request to reopen may be granted on due process grounds.  Shrader v. Harris, 631 F.2d 297 (4th Cir. 1980).

1.     The ALJ's decision not to reopen

Thomas' due process claims revolve around the notice and decision of the ALJ not to reopen the 2003 decision, denying benefits under Application 1.  At a hearing held on

October 22, 2008, the ALJ specifically asked if Thomas was seeking to reopen the 2003 decision which denied her benefits. (TR. 798).  Thomas' attorney affirmed that Thomas was seeking to reopen  the previous decision and her attorney indicated that Thomas wanted to reopen the case because she had new evidence to present regarding Thomas' treatment in 2001. (TR 800-01, 844-45).  Thomas' attorney and the ALJ engaged in a lengthy discussion as to whether the evidence Thomas was offering in support of her request to reopen the previous decision was, in fact, new evidence.  (TR. 844-851).

In the Notice of Hearing sent to Thomas regarding her most recent application for benefits, the ALJ set forth the issues she would consider at the hearing. (TR. 53-54). Specifically, the ALJ noted:

> The first issues are whether the decision(s) on your prior application(s) are res judicata, and whether evidence warrants reopening and revising them (20 CFR 404.957(c)(1), 404.987-9 and/or 416.1457(c)(1), 416.1487-9).
>
> You will be given an opportunity to present new evidence at the hearing.  At that time the Administrative Law Judge will inquire fully into whether your current claim filed [June 3, 2004] presents the same issues and facts as the prior claim(s).  Only after it is found that res judicata is inapplicable or only partially applicable will the undersigned decide the substantive issues . . . .

(TR. 52-56).

Although the ALJ did not specifically use the term res judicata, she did find that all of the issues before the court had been previously litigated in Application 1 and the ruling on Application 1 was final and binding.  She questioned Thomas' attorney extensively about the "new" evidence he was submitting on Thomas' behalf, reviewed it, and found it did not add any support to the contention Thomas was disabled as of March 10, 2001.  (TR. 39). Although the opinion is not a model of clarity, the ALJ determined the issues presented by

17

Thomas had been previously litigated, the evidence presented added nothing to the claims, and reopening and revising Application 1 was not warranted.

The Notice of Decision also cited to the same regulations governing the ALJ's discretionary authority for reopening cases as were cited in the Notice of Hearing regarding reopening an SSI case.[7]  (TR. 32).   As to the SSI claim in Application 1, the court applied 20 C.F.R. § 416.1488, noting that the request to reopen the SSI claim was outside of two years and thus, could only be opened upon a finding of fraud or similar fault.   20 C.F.R. § 4164.1488. The ALJ determined there was no evidence to support such a finding.  (TR. 32).

With regard to her request to reopen her SSDI application, it is true that the ALJ apparently erroneously determined Thomas' "prior application for a period of disability and disability insurance benefits was denied for lack of insured status" and was not being reopened.  However, as explained above, the ALJ's finding that the issues before her had been decided in the opinion on Application 1, even after considering the "new" evidence presented, is tantamount to a decision that the evidence was not "new and material" under 20 C.F.R. § 404.988 and did not provide "good cause" for the ALJ to reopen Application 1 with regard to the SSDI application.

The Notice of Hearing provided to Thomas prior to her hearings advised her that the ALJ would be considering the issues of res judicata and properly identified the Social Security regulations which address the standards for reopening a case.  Thomas was given the opportunity to submit new evidence, and the ALJ considered that new evidence.  Thomas

---

[7] Although the ALJ cited to "20 CFR 404.1488 et seq," the court assumes she was referring to 20 C.F.R. §416.1488 – the section of the Social Security Regulations addressing the reopening of SSI claims under Title XVI.

received notice and an opportunity to be heard, and she does not have a colorable due process claim. (TR.52). Accordingly, this court does not have jurisdiction and Thomas' proposed amendments regarding reopening would be futile.

2.   Notice of Special Rules

Thomas asserts she was not afforded due process with regard to her initial application because the Appeals Council's notice of January 15, 2004 stated that if Thomas did not "ask for court review, the Administrative Law Judge's decision will be a final decision that can be changed only under special rules." (Supp. TR. 7). The notice to Thomas, a copy of which was provided to her counsel, instructed Thomas to contact the Social Security office with any questions. (Supp. TR. 9). Thomas did not seek a judicial review of the unfavorable decision and did not contact the Social Security office regarding the Appeals Council's notice. Thomas now argues her right to due process was violated because she was not informed what "special rules" could be called upon to overturn the ALJ's decision, and she seeks to amend her complaint accordingly.

Although the term "special rules" is indeed vague, Thomas has not made a sufficient showing that her right to due process was violated or that this amounts to a constitutional claim.[8] More importantly, Thomas makes no assertion that she relied on the language in the unfavorable Notice of Appeals Council decision on Application 1. The 8th Circuit requires a connection between the alleged violation and the actions on the part of the claimant. See

---

[8]   Thomas' argument that the Notice violated her due process is not particularly persuasive. The Notice states that the decision would become final and could only be overturned by the application of "special rules." Although the term "special rules" is vague, it undoubtedly put her attorney on notice to review the Social Security rules and regulations regarding reopening final decisions.

Burks-Marshall v. Shalala, 7 F.3d 1346, 1349-50 (8th Cir. 1993). In discussing whether a constitutional claim existed when a claimant for social security benefits argued she received deficient notice, the court held:

> We conclude that the claimant has no standing to raise the due-process issue. She has not shown that the alleged deficiency in the notice had any connection in fact with her own failure to seek review of the two early denials. The power to decide constitutional issues is a delicate one. It is reserved for those cases where the answer to the constitutional question makes a real difference to a person before the court. We do not sit to decide merely abstract questions, especially where the Constitution is concerned. The claimant suggests that she was assured that she did not need a lawyer, that the ALJ would take care of her interests, but this is a different point. She does not say that after reading the notice she understood it to mean that she could apply again at any time for benefits for the periods involved in her denied claims, and that, for that reason, she decided to forego further review at the time. Accordingly, we do not reach the constitutional issue in this case.

Burks-Marshall, 7 F.3d at 1349-50.

Thomas was made aware that the decision on Application 1 would become final and could be reversed only under special rules if she did not seek court review of the denial. Nowhere in Thomas' briefing does she argue that she detrimentally relied upon the language in the Notice of Appeals Council Action on Application 1 in reaching her decision to submit a new application for Social Security benefits rather than seek judicial review of the unfavorable decision in Application 1. Thus, even if the court accepted her argument that the Notice of Appeals Council Action was defective, the court will not reach the issue of reopening the claim because Thomas has not alleged detrimental reliance, rendering any such amendment to her complaint futile.

3.     Constructive Reopening

Thomas argues that the ALJ constructively re-opened Application 1 by considering evidence from the period of her initial application until September 26, 2003. However, the mere consideration of evidence from an earlier application is not considered reopening a claim.  See Burks-Marshall, 7 F.3d at 1348 (8th Cir. 1993); Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989).  Moreover, where the ALJ expressly states that she is not opening a prior decision, the court will not find the case has been constructively reopened. See Britton v. Astrue, 622 F. Supp. 2d 771, 790 (D. Minn. 2008); Slycord v. Chater, 921 F.Supp. 631, 640 n. 5 (N.D. Iowa 1996) (internal citations omitted).

In this case, although the ALJ considered evidence from the time period involved in Application 1, she expressly held that she was not reopening Application 1.  (TR. 35). Indeed, her discussions of the previous evidence were to determine if Thomas was disabled from September 26, 2003 to March 1, 2004 and not for the purposes of reopening a previous claim.   Accordingly, Thomas' argument that her previous case was constructively reopened by the ALJ is without merit.

4.     Thomas 2001 claim for SSI benefits.

Thomas argues that she never received a final ruling on her 2001 Application for SSI benefits under Title XVI, arguing that her right to procedural due process was violated because she did not receive "a hearing and notice of decision" on Application 1 or, in the alternative, this court has mandamus jurisdiction to "order the performance of Defendant's non-discretionary duties." Filing No. 42 ¶ 19, (Proposed Amended Complaint).

The decision on Application 1 notes that it is for the payment of supplemental security income benefits under Title XVI of the Social Security Act. (TR. 14).  In the "Findings"

21

portion of the opinion, the ALJ specifically found the claimant was not disabled "as that term is defined under the Social Security Act . . . pursuant to [the SSDI regulations under Title II]." (Supp. TR. 23).   The ALJ also found "[t]he claimant is not entitled to a period of disability or to the payment of disability benefits under Title II of the Social Security Act." (Supp. TR. 23).   The "Findings" portion does not specifically mention Title XVI.   Thomas states that the absence of the ALJ's specific mention of her claims for SSI benefits means her claim is either still open or she is entitled to a corrected opinion specifically identifying her claim and providing her with additional time to either appeal the decision or request reopening.

a.      Due process

As explained above, any claim addressing an alleged due process violation must assert detrimental reliance.   Burks-Marshall, 7 F.3d at 1349-50.    Thomas does not allege she detrimentally relied on the alleged deficiencies in the ruling on Application 1 in any way. That is, there is no indication that she believed her claim for SSI benefits was still open.   To the contrary, she has filed two additional applications requesting SSI benefits rather than following up on the allegedly deficient ruling in Application 1.   As with her other due process claims, this one is without merit and any amendment to her Complaint would be futile.

Moreover, there is no threat of an erroneous deprivation of her rights, as required by Matthews.   Where a deficiency in an ALJ's opinion has "no bearing on the outcome," the opinion is not required to be set aside.   Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008). Here, the opinion is technically deficient, however the deficiency had no bearing on the outcome.   The ALJ made a finding that Thomas was not disabled under the Social Security Act (Supp. TR. 23).   Contrary to Thomas' assertion, the failure of the ALJ to include Title XVI in the "Findings" portion of the opinion does not "change[] the entire force" of the

ALJ's decision. The definition of "disabled" is the same for SSDI and SSI claims.  Compare 42 U.S.C. § 423(d) with 42 U.S.C. § 1382(c)(a); see also Bowen v. City of New York, 476 U.S. 467, 469-70 (1986)(noting the definition of "disability" is the same under SSI and SSDI); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997)(SSDI and SSI follow the same five-step process to determine whether a claimant is disabled); Mickles v. Shalala, 29 F.3d 918, 924 n. 2 (4th Cir. 1994) (definition of "disabled" is the same for SSI and SSDI")

The ALJ determined Thomas was not disabled.  Because the definition of "disability" is the same for both SSI and SSDI, the finding that Thomas was not disabled precluded an award of benefits under either Title II or Title XVI.  The omission of an express statement that Thomas did not qualify for SSI benefits under Title XVI had no bearing on the outcome of Thomas' application for benefits.  Because the ALJ determined Thomas was not disabled, she was not entitled to benefits under SSI or SSDI and the ALJ's opinion created a final decision that does not warrant remand or the issuance of a corrected opinion because there is no risk of erroneous deprivation of Thomas' rights for the purposes of due process.

> b.   Mandamus

The mandamus statute provides: "[t]he district courts shall have original jurisdiction of any action . . . to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "A writ of mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear non-discretionary duty." Heckler v. Ringer, 466 U.S. 602, 616-17 (1984); see also Taylor v. Barnhart, 399 F.3d 891, 894 (8th Cir. 2005)..

The analysis for mandamus purposes is much the same as the due process analysis. As noted above, a deficiency that has no bearing on the case does not require remand. Hepp, 511 F.3d at 806 (8th Cir. 2008).   The ALJ made a finding Thomas was not disabled.  As

23

such, Thomas did not qualify for benefits under either SSI or SSDI.  Thomas  was informed of the potential judicial and administrative remedies she could pursue.  Thomas elected to file a new application instead.  The, the Commissioner does not owe Thomas any further non-discretionary duty and amending her complaint to add a claim for mandamus relief would be futile.

B.      The Merits of the Case

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001) .

> If substantial evidence on the record as a whole supports the Commissioner's decision, it must be affirmed. Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir 2006) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).

Schultz v. Astrue, 479 F.3d 979, 982 (8th Cir. 2007). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. Wildman v. Astrue, 596 F. 3d 959 (8th Cir. 2010).

> A treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir.2005) (quotation omitted). However, while entitled to special weight, it does not automatically control, particularly if "the treating physician evidence is itself inconsistent." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir.1995); see Wagner v. Astrue, 499 F.3d 842, 853-54,

No. 06-3580, 2007 WL 2403743, slip op. at 10-11 (8th Cir. Aug. 24, 2007); Guilliams v. Barnhart, 393 F.3d 798, 803 (8th Cir.2005).

House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007). A treating physician's opinion regarding whether and to what extent a claimant be disabled from performing work is not due any deference "because a finding of disability is one reserved for the Commissioner." Robson v. Astrue, 526 F.3d 389, 393 (8th Cir. 2008).

The ALJ did not dispute Thomas had a diagnosis of fibromyalgia dating back to 2001. (TR. 42). However, based on the testimony of the medical expert, the ALJ determined that Thomas did not become disabled until a combination of fibromyalgia and depression exacerbated her symptoms as of March 1, 2004. That is, Thomas was capable of performing "light work" until March 1, 2004. In reliance on her finding, the ALJ cited to three evaluations that occurred around March of 2004. The first was an examination by Dr. Froehr on March 26, 2004. Dr. Froehner essentially confirmed the earlier diagnosis of fibromyaliga as the musculoskeletal exam revealed "most of the trigger points that are known for fibromyalgia." (TR. 456). The second was a psychiatric evaluation performed on April 5, 2004 by Dr. Sanat Roy, M.D. Dr. Roy diagnosed her with depressive disorder and assigned a GAF score of 60.[9] Finally, Thomas sought vocational rehabilitation services in March of 2004. On March 24, 2004 the rehabilitation counselor indicated that "there are days when [Thomas] is unable to do anything. (TR. 331). The caseworker for her Vocational Assessment Summary conducted on April 27, 2004 stated:

> Nicole was having difficulty physically tolerating the amount of sitting and stooping over a paper or keyboard, so we decided to terminate the evaluation at noon. It appears to this evaluator that Nicole does have the potential and abilities to learn a number of tasks, but she does not have the ability to

[9] A GAF of 51-60 indicates "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning . . . . DSM-IV, p. 34.

physically maintain so that she can participate in a classroom or learning environment for an extended period of time. This would also apply to a work situation. Nicole probably would have the ability to learn a job, but could not perform because of her disability and the pain she experiences on an ongoing basis. Nicole did appear to be uncomfortable throughout the day and it was obvious as time progressed that she was becoming more and more uncomfortable. We did allow for breaks as needed, but that really offered only temporary relief. At this point it does not appear as though competitive employment is reasonable consideration as Nicole reports that many days she is much worse than it appeared today.

(TR. 355). Based on these events during vocational rehabilitation, her examination of the entire record, and the testimony of medical expert Dr. Alex, the ALJ determined that Thomas' fibromyalgia was exacerbated by her worsening depression, rendering her disabled and unable to participate in substantial gainful employment as of March 1, 2004. (TR. 48).

Relying almost entirely on the opinion of Dr. Alex, the ALJ gave his opinion the "greatest weight." (TR. 48). After reviewing the record the court finds there is not "substantial evidence" on the record to support the ALJ's decision that Thomas' condition was exacerbated or made worse as of March 1, 2004 due to an increase in her depressive symptoms.

Dr. Alex was not a treating physician, and the weight afforded to his testimony therefore depends on "the degree to which [he] provide[d] supporting explanations for [his] opinions." 20 C.F.R. § 404.1527(d)(3). Although there is not a wealth of evidence from the time period in question, the most detailed and objective piece of evidence regarding Thomas' ability to function are the notes from the vocational rehabilitation counselor from April of 2004 noting that Thomas was not able to tolerate sitting or stooping and was visibly uncomfortable throughout the day. (TR. 355). However, these observations are not significantly different from the previous opinions of her treating physicians who opined Thomas would have difficulty maintaining full time employment.

Dr. Alex's opinion relied significantly on what he described as exacerbation of her depressive condition correlating to an increase in her physical symptoms.  His sole evidence for this opinion is her decreasing GAF scores.  However, there is not "substantial evidence on the record" to support this opinion.  It is true that Thomas GAF scores decreased from 70 in 2002 to 60 on April 5, 2004.  However, Dr. Alex did not consider the fact that Thomas was assigned a GAF score of 58 in March of 2003.  (TR. 401).  Thus, based on the GAF scores, Thomas' depression had undoubtedly declined to the point of exacerbating her physical symptoms by September 26, 2003 – the earliest date in which she could begin receiving benefits.  Dr. Alex's suggested March 1, 2004 disability onset date, and his rationale for choosing that date, are not supported by the record.

Once the ALJ decided Thomas had a severe impairment and could not perform past relevant work, the Commissioner had the burden of producing evidence to show Thomas could perform other work.  See Harris v. Barnhart, 356 F.3d 926, 931 (8th Cir. 2004).  The Commissioner may satisfy this burden by eliciting testimony from a vocational expert and requesting responses to hypothetical questions that include the plaintiff's physical and mental impairments.  See Harris, 356 F.3d at 931.  The ALJ received testimony from the vocational expert and attempted to incorporate Thomas' limitations and disabilities.

In discussing Thomas' RFC, and relying entirely upon the testimony of the independent medical expert, the ALJ specifically referenced a change in her physical limitations after March 1, 2004 to account for Thomas' increased problems with depression and its interaction with her fibromyalgia.  (TR. 45).  However, because the evidence on the record does not support a finding that Thomas became more depressed from September 26, 2003 to March 1, 2004, the ALJ erred in determining Thomas' RFC from September 26, 2003 to March 1, 2004.  To the contrary, the record provides no support for that contention; based on her GAF scores, Thomas' mental state had already declined by September 26, 2003.  Accordingly, the questions posed to the vocational expert upon which the ALJ relied to

determine Thomas' RFC from September 26, 2003 to March 1, 2004 did not accurately reflect the impact of Thomas' depression on her fibromyaliga. The responses to those questions cannot be used by the Commissioner to meet the burden of production on the issue of whether "other work" existed in the national economy for Thomas. See Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998).


Accordingly, IT IS ORDERED:


1)      Plaintiffs' motion to amend her complaint, (filing no. 41), is denied as futile.

2)      Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and remanded for further determination of whether Thomas was disabled, for the purposes of disability insurance benefits and supplemental security benefits, from September 26, 2003 to February 29, 2004.


DATED this 21st day of March, 2012.


BY THE COURT:



_s/ Cheryl R. Zwart_____

United States Magistrate Judge



---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.